UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

K.L., an individual,

        Plaintiff,

vs.

AMERICA'S BEST VALUE INN, RODEWAY INN, RODEWAY INNS INTERNATIONAL, INC., CHOICE HOTELS INTERNATIONAL, INC., and SONESTA INTERNATIONAL HOTELS CORPORATION,

        Defendants.

CIVIL ACTION NO:

### **COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff K.L., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

### **INTRODUCTION**

1. This action for damages is brought by K.L. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595, as well as per any state laws as may be identified herein.

2. Defendant AMERICA'S BEST VALUE INN ("ABV") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel located at 1247 Harrisburg Pike, Carlisle, Pennsylvania 17013 during the relevant time period, and prior thereto, and as such was/is responsible, for the subject hotel during the time period that Plaintiff was sex trafficked on said premises.

3. Defendant RODEWAY INN ("Rodeway I") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel located at 1239 Harrisburg Pike, Carlisle, Pennsylvania 17013 during the relevant time period, and prior thereto, and as such was/is responsible, for the subject hotel during the time period that Plaintiff was sex trafficked on said premises.

4. Defendant RODEWAY INN ("Rodeway II") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel located at 631 Eisenhower Boulevard, Harrisburg, Pennsylvania 17111 during the relevant time period, and prior thereto, and as such was/is responsible, for the subject hotel during the time period that Plaintiff was sex trafficked on said premises.

5. At all relevant times in this Complaint, individual Rodeway Inn locations were owned, operated, managed, franchised, managed, and/or supervised by, and/or were subsidiaries of RODEWAY INNS INTERNATIONAL, INC. ("Rodeway International"). Roadway International is headquartered at 10750 Columbia Pike, Silver Spring, Maryland 20901.

6. At all relevant times in this Complaint, Rodeway Inns were owned, operated, franchised, managed, and/or supervised by, and/or were subsidiaries of CHOICE HOTELS INTERNATIONAL, INC. ("Choice"). Choice Hotels International, Inc. is headquartered at 915 Meeting St., North Bethesda, Maryland 20852.

7. At all relevant times in this Complaint, ABV was owned, operated, franchised, managed, and/or supervised by, and/or were subsidiaries of SONESTA INTERNATIONAL HOTELS CORPORATION ("Sonesta"). Sonesta is headquartered at 400 Centre St. U21 , Newton, MA 02458.

8. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring,

transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age." (alteration added)

9.    Plaintiff meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her trafficker(s) to engage in commercial sex at the subject hotel.

10.    Plaintiff is a victim as set forth in the TVPRA as she was induced to engage in commercial sex by her trafficker(s) by force, fraud, and coercion at the subject hotel.

11.    Plaintiff was psychologically and/or physically prohibited from escape from her trafficker(s).

12.    The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

13.    Specifically, section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

10.    As it pertains to ABV, Rodeway I, and Rodeway II (collectively, "subject hotels"), Plaintiff was sex trafficked at the aforesaid hotels by her trafficker(s) in 2016 and 2017.

11.    Sex trafficking had occurred at these subject hotels dating back to at least 2016 and, upon information and belief, prior thereto.

12.    As hotel operators, Defendants controlled the training, policies, and decisions on

implementation and execution of anti-trafficking policies, protocol, rules and guidelines for their subject properties where Plaintiff was trafficked.

13. Sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), and the ability to maintain some level of anonymity, privacy and discretion.

14. At all material times, upon information and belief, Defendants had knowledge of the prevalence of sexual trafficking within the hotel industry, yet Defendants failed to prevent and/or take steps to prevent this trafficking from occurring at the subject hotel, so that Defendants could continue earning a profit.

15. As part of their knowledge of sex trafficking, Defendants knew or should have known that sex trafficker(s), or 'pimps', use drugs, threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel women to engage in commercial sex acts against their will on hotel premises.

16. Plaintiff's sex trafficker(s) deliberately selected the Defendants' hotels as venues to conduct their sex trafficking activities.

17. The passage of the TVPRA in 2008, as well as numerous other legislative initiatives, put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be even more vigilant and proactive in preventing this conduct.

18. Defendants participated in a venture by operating hotels that rented rooms to individuals that Defendants knew or should have known were involved in sex-trafficking pertaining to Plaintiff.

19. The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet the "financially benefitted" element of the §1595(a) standard.

20. Defendants, as the owners, operators, managers, controllers, and/or franchisees of hotels knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, at the subject hotels as a result of their misfeasance and nonfeasance.

21. A hotel can deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs and/or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

22. Upon information and belief, years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

23. Training of front-line hotel employees to be alert to red flags of trafficking activity is imperative and a best practice of hotel operating companies. Sex traffickers utilizing hotels within which to operate their illegal enterprises was well known within the industry by 2011. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA), ECPAT-USA, and via other resources.

24. At all material times, Defendants, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring at the subject

hotel, including as to Plaintiff.

25. At all material times, Defendant, individually and/or by their actual or apparent agents, operators, servants, and/or employees, harbored sex trafficker(s) at the subject hotel and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the subject hotel.

26. At all material times, Defendants, individually and/or by their respective actual or apparent agents, operators, servants, and/or employees, failed to take steps to prevent dangerous conditions from existing at the subject hotel, failed to ensure the subject hotel was safe and secure from criminal conduct and failed to report suspicious conduct, such as sex trafficking, at the subject hotel.

27. As a result of Defendants' failure to act and Defendants' negligent operations as outlined in the Complaint, Defendant allowed the subject hotels to be premises for the carrying out of sex trafficking of this Plaintiff.

28. While Defendants profited from the room occupancy at the subject hotels, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff was being exposed to continuous and repeated dangerous conditions at the subject hotel as a sex trafficked victim that resulted in her confinement, bodily injuries, being exploited sexually, emotional distress, mental harm and anguish and conscious pain and suffering on the subject premises.

29. Before and during this period of trafficking as alleged herein during 2016 and 2017, Defendants were on notice of the prevalence of sex trafficking at the subject hotels as well as at similarly situated hotels within the subject location and its general vicinity, and Defendants failed to take adequate steps that would have prevented its occurrence.

30.    Before and during the relevant period Defendants failed to implement sufficient educational and training programs on sex trafficking within their business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

31.    During the relevant time period of trafficking as alleged herein during 2016 and 2017, Defendants ABV, Rodeway I and Rodeway II knew or should have known that Plaintiff was being trafficked at the subject hotels and Defendants failed to act upon the obvious and overt signs alerting them to the crimes taking place at these subject hotels.

32.    During the relevant time period of trafficking as alleged herein during 2016 and 2017, Defendants Choice Hotels International, Inc., Rodeway Inns International, Inc., and Sonesta International Hotels Corporation (collectively, "Corporate Defendants"), knew or should have known that their hotels, particularly hotels like ABV and Rodeway Inns that hold themselves out as "budget" or "economy" hotels, are havens for sex trafficking. However, these Defendants failed to effectively implement measures and policies to address this risk.

33.    Plaintiff brings this action for damages against Defendants. Defendants, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking venture in which Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

34.    Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security, it is more likely than not that the injuries suffered by the Plaintiff at the subject hotels

would have been prevented or mitigated.

35.    Defendants knowingly benefitted financially by receiving things of value by means of operating a hotel and renting rooms to trafficker(s) (or members of their entourage) and said Defendants knew or should have known said traffickers were engaged in an act in violation of the subject TVPRA chapter pertaining to Plaintiff.

36.    Defendants knew or should have known of the ongoing criminal enterprises of sex that had been conspicuously operating in the subject hotels.

37.    As a direct and proximate result of Defendants' willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent sex trafficking at the subject hotel, the Plaintiff was drugged, malnourished, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at this subject hotel.

38.    Plaintiff is a victim as set forth in the TVPRA as, during the relevant time herein, she was induced to engage in commercial sex by her trafficker(s) by fraud, force and coercion at the subject hotel.

39.    Due to the failure of Defendants to timely and properly embrace and implement anti-trafficking policies and practices, Plaintiff was repeatedly abused, victimized, and trafficked for sex. Defendants ignored open and obvious indications of sex trafficking that enabled Plaintiff's trafficker(s) to use the subject hotel to traffic Plaintiff and likely other victims without repercussion.

## JURISDICTION AND VENUE

40.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely the TVPRA 18 U.S.C. § 1595 and this Court has supplemental jurisdiction over Plaintiff's claims

that do not arise under federal law because each claim is "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

41. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought, and Defendants conduct business within this District pursuant to 28 U.S.C § 1391(b).

## **PARTIES**

42. At all times relevant and material to the sex trafficking alleged herein, Plaintiff was residing in the Commonwealth of Pennsylvania.

43. Plaintiff is currently a resident of the State of Pennsylvania.

44. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

45. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the privacy and identity of Plaintiff who incurred injuries and damages when being exploited by sex traffickers on the premises of the subject hotel. Nationwide, similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

46. As it pertains to Defendant ABV, and in particular the allegations brought herein, Plaintiff was sex trafficked at the "subject hotel" located at 1247 Harrisburg Pike, Carlisle, Pennsylvania 17013 in 2016 and 2017.

47. As it pertains to Defendant Rodeway I, and in particular the allegations brought herein, Plaintiff was sex trafficked at the "subject hotel" located at 1239 Harrisburg Pike, Carlisle,

Pennsylvania 17013 in 2016 and 2017.

48. As it pertains to Defendant Rodeway II, and in particular the allegations brought herein, Plaintiff was sex trafficked at the "subject hotel" located at 631 Eisenhower Boulevard, Harrisburg, Pennsylvania 17111 in 2016 and 2017.

49. As it pertains to Rodeway International, Roadway International is headquartered at 10750 Columbia Pike, Silver Spring, Maryland 20901.

50. As it pertains to Choice Hotels International, Choice Hotels International, Inc. is headquartered at 915 Meeting St., North Bethesda, Maryland 20852.

51. As it pertains to Sonesta, Sonesta is headquartered at 400 Centre St.U21 , Newton, MA 02458.

52. At all relevant and material times, Defendant ABV was doing business located at 1247 Harrisburg Pike, Carlisle, Pennsylvania 17013 and, upon information and belief, was authorized to do, licensed to do, and was doing business in the Commonwealth of Pennsylvania offering the subject hotel as a place of public lodging.

53. At all relevant and material times, Defendant Rodeway I was doing business located at 1239 Harrisburg Pike, Carlisle, Pennsylvania 17013 and, upon information and belief, was authorized to do, licensed to do, and was doing business in the Commonwealth of Pennsylvania offering the subject hotel as a place of public lodging.

54. At all relevant and material times, Defendant Rodeway II was doing business located at 631 Eisenhower Boulevard, Harrisburg, Pennsylvania 17111 and, upon information and belief, was authorized to do, licensed to do, and was doing business in the Commonwealth of Pennsylvania offering the subject hotel as a place of public lodging.

55. At all relevant and material times, Defendant Rodeway International was doing business in

the Commonwealth of Pennsylvania offering the subject hotel as a place of public lodging.

56.     At all relevant and material times, Defendant Choice Hotels, Inc. was doing business in the Commonwealth of Pennsylvania offering the subject hotels as a place of public lodging.

57.     At all relevant and material times, Defendant Sonesta was doing business in the Commonwealth of Pennsylvania offering the subject hotels as a place of public lodging.

## SEX TRAFFICKING UNDER FEDERAL LAW

58.     The requirements for liability under TVPRA, 18 U.S.C. § 1595 on a beneficiary theory can be stated as follows: (1) the person or entity must "knowingly benefit, financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

59.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age."

60.     Sex trafficking ventures are prohibited by federal criminal law under the already existing crimes 18 U.S.C. § 1589 and §1590.

61.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

62.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion or from a person under the age of 18 years old are guilty of sex trafficking.  This includes, at a minimum, both the 'traffickers'

who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

63.    Due to the failure of the hospitality industry to address the issue, hotels are the venue of choice for sex trafficking.

## DEFENDANTS' DUTY OF CARE TO PATRONS

64.    In the Commonwealth of Pennsylvania, hotels are "innkeepers" and owe patrons a special duty of care.

65.    The subject Defendant are public lodging establishments.

66.    Defendants operated, managed, supervised, controlled, leased and/or are otherwise responsible for the subject hotels for the purpose of making a profit for the relevant time period in question. The premises of the subject hotels include a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, Defendants had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto as it applies to their business of providing public lodging at the subject hotels.

67.    Aside from their special duty to patrons and guests at the subject hotel, such as Plaintiff at all material times, Defendants had one of the highest obligations to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

68.    At all relevant times, Defendants were aware of and/or should have been aware of their roles and responsibility in sex trafficking.

**A. DEFENDANTS' KNOWLEDGE OF THE PREVALENCE OF SEX TRAFFICKING AT THE SUBJECT HOTEL AND THEIR PARTICIPATION.**

69.    At all relevant and material times, Defendants, as owners, operators, managers,

supervisors, controllers and/or entities otherwise responsible for the subject hotels, knew or should have known that their hotels offered a level of anonymity and a level of non-traceability, making them ideal venues for crime, drugs and sex trafficking in particular.

70.    At all relevant and material times, Defendants, as owners, operators, managers, supervisors, controllers and/or entity otherwise responsible for the subject hotel knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using the subject hotels as a hub for their sexual trafficking operations.

71.    At all material times, Defendants, as owner, operators, managers, supervisors, controllers and/or entities otherwise responsible for the subject hotel knew or should have known that trafficker(s) were harboring victims, including Plaintiff, at the subject hotel, and were forcing them to engage in sex services, wherein buyers ("Johns") would come to the hotel to purchase sex.

72.    At all relevant and material times, Defendants, individually and/or by and through their actual or apparent agents, servants, franchisees and/or employees, witnessed manifestations of sex trafficking and commercial exploitation taking place at the subject hotel through various indicators that trafficker(s) and their victims exhibit during their stay at the subject hotel.

73.    At all relevant and material times, Defendants were on notice of repeated incidences of sex trafficking occurring on the premises of the subject hotels, yet they failed to take the necessary actions to prevent sex trafficking from taking place and in particular, the sex trafficking of Plaintiff.

74.    At all relevant and material times, Defendants knew or should have known that "pimps," "johns" and/or sex trafficker(s) used the subject hotel to facilitate the trafficking of women for sex, including but not limited to Plaintiff.

75.    Defendants had the knowledge, ability, and the greatest reach to prevent, identify and

thwart sexual exploitation, including that of Plaintiff, at these subject hotels.

76. Multiple statutes and initiatives starting in 1997 have informed, mandated, called for, and suggested hotel operators, managers, supervisors, controllers and/or staff, including the Defendants, implement effective safeguards to mitigate the risk that sex trafficking will occur at or involve their premises and personnel, including the subject hotels.

77. Prior to the trafficking of Plaintiff, voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to Defendants, individually and/or through their actual or apparent agents, servants, employees and/or staff in every position, to help them identify the signs of sex trafficking and stop it.

78. At all relevant and material times, Defendants had a legally imposed duty to ensure that their subject hotel had taken all appropriate measures to prevent sex trafficking, and/or to timely implement reasonable policies, training, education and security measures to prevent sex trafficking.

79. At all relevant and material times, the agents and/or employees of Defendants were uniquely situated to identify and report suspicious activity on their hotel properties because from check-in to check-out there were numerous indicators of the subject sex trafficking that was occurring of this Plaintiff at the subject hotel. See e.g. indicators listed in Count 1 below.

80. Defendants' agents and/or employees, however, failed to take steps to report the suspicious and obvious trafficking indicators at the subject hotels.

81. Had Defendants properly trained their staff, agents and/or employees and/or implemented an anti-sex trafficking protocol at this subject hotel and/or provided other reasonable security measures, they would have prevented the trafficking of persons at this subject hotel, and particularly this Plaintiff.

82.    Signs of sex trafficking at a hotel, and signs which were occurring at Defendants' hotels include, but are not limited to, those "red flags" identified in Count 1 below.

83.    Defendants, individually and by and through their actual or apparent agents, servants, employees and/or staff, were aware of and/or should have been aware of a number of warning signs at their hotel that indicated the presence of sex trafficking, including but not limited to:

a.  Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b.  Persons lacking freedom of movement or being constantly monitored;

c.  Persons in risqué clothing;

d.  Victim(s) dressed in a sexually explicit manner;

e.  Persons requesting room or housekeeping services (additional towels, new linens, etc.), but routinely denying hotel staff entry into the room;

f.  Hotel guests with few or no personal possessions during check in and within the room;

g.  Sex paraphernalia in rooms (condoms, lubricant, lotion);

h.  Large amounts of e.g. used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels, and other sex-related items in the hotel rooms;

i.  Payments for the rooms in cash, or cash substitutes such as a prepaid credit card;

j.  Victim(s) and/or Plaintiff's physical appearance (malnourished, bruised, beaten, drugged, and inappropriate attire);

k.  A continuous procession of men (sex buyers and/or "Johns") entering and leaving Plaintiff's and/or victim(s)' room;

l.  Excessive requests for sheets, cleaning supplies, towels, and room service;

    m.  Red flags identified in Count 1 below; and

    n.  Other red flags that Defendants knew and/or should have known of.

84.  Defendants could have and should have adopted policies and procedures related to sex trafficking and made anti-sex trafficking resources readily available to their actual or apparent agents, servants, employees and/or staff, but, upon information and belief, they did not.

85.  Defendants could have and should have mandated that all of their actual or apparent agents, servants, franchisees, employees and/or staff complete anti-sex trafficking training, but, upon information and belief, they did not properly do so.

86.  Defendants could have and should have encouraged all of their actual or apparent agents, servants, staff, employees and/or staff to report suspected incidents of sex trafficking when observed at the subject hotel, but, upon information and belief, they did not.

87.  Defendants could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of sex trafficking at the subject hotel, but, upon information and belief, they did not.

88.  Defendants could have and should have posted anti-sex trafficking awareness and informational materials in common areas and guest rooms at the subject hotel, to help eliminate sex trafficking, but, upon information and belief, they did not properly do so.

89.  Defendants failed to take effective preventative measure at the subject hotel, in spite of the indicia of sex trafficking and effective preventative measures being widely known and available to them; they simply elected not to properly engage in preventative policies and practices.

90.  The motivation behind Defendants ongoing willful blindness and ongoing failure to act was, in whole or in part, for Defendants' financial benefit.

91.    By repeatedly failing to heed the call or repeatedly failing to execute their own policies, Defendants facilitated the sexual trafficking crimes at the subject hotel and in particular the victimization of this Plaintiff.

92.    Due to Defendants' actions, failures to act, and/or omissions, Defendants facilitated and enabled sex trafficker(s) to use the subject hotel for sex trafficking of women and this particular Plaintiff.

93.    Defendants' failure to prevent and stop sex trafficking and sexual exploitation at the subject hotel, makes them accountable to victims of sex trafficking, including the Plaintiff.

**B. <u>THE SEX TRAFFICKING OF PLAINTIFF AT THE SUBJECT HOTEL</u>**

94.    Pertaining to these Defendants, during 2016 and 2017, Plaintiff was sex trafficked at the subject hotels by her trafficker(s).

95.    At all relevant and material times to this Complaint, Defendants, individually and/or by and through their actual or apparent agents, servants, and/or employees, rented rooms at the subject hotel to Plaintiff's sex trafficker(s) and Defendants financially benefitted from same.

96.    At all times material to this Complaint, Defendants received monetary payment for the rental of rooms at the subject hotel, including the room(s) where Plaintiff was being trafficked.

97.    Plaintiff was forced to engage in sexual activities within and on the premises of the subject hotel, including within the rooms rented to and/or by Plaintiff's trafficker(s), that was at all relevant times owned, operated, managed, supervised, controlled by Defendants. Force means any form of violence compulsion or restraint exercised upon or against a person. Force can also be affected through power or pressure which need not necessitate physical components.

98.    As it pertains to this Defendants, Plaintiff performed numerous commercial sex acts per day while at the subject hotels.

99.    While at the subject hotels, Plaintiff was forced to engage in frequent use of drugs and/or alcohol and would exhibit behavior consistent with someone who was under the influence, or near overdose, of same.

100.    Defendants, individually and/ or by their actual or apparent agents, servants, staff and/or employees, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as Plaintiff's sex trafficker(s), who were engaged in the commercial sex trade.

101.    Defendants, individually and/or by their actual or apparent agents, servants, and/or employees, knew or should have known of suspicious activity occurring at the subject hotel and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out on their hotel premises.

102.    It follows then that Defendants could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on their premises and/or were being committed against hotel guests, such as Plaintiff.

103.    Moreover, Defendants' agents, servants, staff and employees observed Plaintiff and had knowledge, or should have had knowledge, that Plaintiff was staying at the hotel for an extended period of time to carry out sex trafficking.

104.    At all relevant and material times, Defendants, individually and/or by and through their actual or apparent agents, servants, staff and/or employees, were uniquely positioned to observe the manifestations or indications of sex trafficking within the subject hotel.

105.    Had the subject hotel staff been properly trained by Defendants and/or anyone acting on their behalf regarding the obvious and overt signs of sex trafficking, they would have observed the obvious and overt signs of sex trafficking at the subject hotel, including as they applied to Plaintiff, and these signs would have been recognized and, therefore, reported.

106.    Defendants exercised or had the right to exercise control over business operations, management, supervision, administration, and procedures of the subject hotel.

107.    Defendants failed to implement and enforce their own policy or policies and protect Plaintiff from being sex trafficked.

108.    Defendants knew or should have known that the subject hotel where Plaintiff was trafficked was an area known for incidences of crime and prone to sex trafficking activity on and around the subject hotel premises, including when Plaintiff was trafficked.

109.    Despite having evidence of sex trafficking that occurred at the subject hotel, Defendants failed to stop these actions.

110.    Defendants would have prevented sex trafficking, including but not limited to, by: (i) distributing information to assist their agents, employees, staff in identifying sex trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is sex trafficking and a national hotline; (iii) providing a process for reporting and escalating sex trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving sex trafficking; (v) providing new hire orientation on anti-sex trafficking measures, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to their staff through webinars, seminars, conferences, and online portals on how to respond to suspected sex traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on sex trafficking;

or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery; and (ix) ensuring strict security protocols, credit cards only, and no loitering.

111.    Defendants failed to take adequate steps to prevent sex trafficking at the subject hotel where Plaintiff was trafficked.

112.    The acts and/or omissions of Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of Plaintiff, and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking, and particularly this Plaintiff.

## C. DEFENDANTS KNOWINGLY BENEFITTED FROM PLAINTIFF'S SEX TRAFFICKING

113.    At all relevant and material times, Defendants received money and financially profited from the forced commercial sex acts being performed by Plaintiff that were being carried out on the premises of the subject hotel.

114.    Defendants knew or should have known that they were financially profiting from the continuation of illegal commercial sex acts committed on the premises of the subject hotels through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

115.    Despite knowledge, constructive knowledge and/or general awareness of the signs of sex trafficking, Defendants, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, failed to report to authorities, intervene, disrupt, refuse or otherwise stop the sex trafficking of Plaintiff.

116.    By harboring Plaintiff's sex trafficker(s) and their sex trafficked victims at the subject

hotel, Defendants, individually and/or by and through their actual or apparent agents, servants, staff, and/or employees, continued to financially profit from the room occupancy derived from not reporting and not refusing the sex trafficking of Plaintiff.

117.    Accordingly, Defendants continued to financially profit from the room occupancy derived from not protecting their hotel guests, to wit Plaintiff, from being a continuous victim of sex trafficking during the subject time period in 2016 and 2017.

## D. **DEFENDANT'S WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTEL**

118.    Plaintiff was a hotel guest at the subject hotels and Plaintiff was seriously and permanently injured as a direct result of the Defendants' acts and omissions, in that Defendants permitted, harbored and facilitated illegal sex trafficking to take place at the subject hotel whereby the Plaintiff was coerced and forced to engage in sex, manipulated with drugs, and enslaved.

119.    More specifically, at all material times, in the quest for profits, the acts and/or omissions of Defendants caused Plaintiff to suffer physical, mental and emotional injuries and conscious pain and suffering.

120.    The injuries and/or harms that Plaintiff suffered as a result of Defendants' negligent operation of the subject hotel and Defendants' failure to make the hotel premises safe, are of a permanent and/or continuing nature.

121.    Defendants, as hotel operators, owners, franchisee, supervisors and controllers, had a continuing legal duty to protect their hotel guests and other invitees, like Plaintiff, to use ordinary care to keep their hotel premises in a reasonably safe condition, and to protect their guests, such as Plaintiff, from harm due to reasonably foreseeable risks of injury, regardless

if the guests were utilizing the hotel's common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.

122.    Defendants failed in their duties to Plaintiff to provide security and other precautions to prevent the criminal acts upon her by third parties on a regular basis.

123.    Defendants should have taken steps to prevent sex trafficking at the subject hotel in accordance with applicable Federal, State and local laws and guidelines.

124.    Accordingly, because sex trafficking and other illegal activity associated therewith was foreseeable, Defendants had a duty to take adequate security or remedial measures to protect their guests from criminal activity, to wit, the Plaintiff.

125.    By failing to act, Defendants, by and through their actual or apparent agents, servants, franchisees and/or employees, allowed Plaintiff to be harbored and confined for sexual acts while collecting rental fees thereon.

126.    As a further direct and proximate result of Defendants' conduct and lack of due and reasonable care, Plaintiff has incurred expenses, fees, and costs of medical care and attention to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and (4) transportation costs to and from various physicians' offices and hospitals.

127.    As a further direct and proximate result of Defendants' conduct and lack of due and reasonable care, Plaintiff has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which Plaintiff should also be compensated by Defendants.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

*Plaintiff vs. America's Best Value Inn, Rodeway Inn I, and Rodeway Inn II*

128.   Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above captioned Defendants.

129.   In support of her action against Defendants, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint as if fully set forth herein.

130.   Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

131.   As it pertains to Defendant ABV, Plaintiff was sex trafficked at the subject hotel located at 1247 Harrisburg Pike, Carlisle, Pennsylvania 17013 during 2016 and 2017.

132.   As it pertains to Defendant Rodeway, Plaintiff was sex trafficked at the subject hotel located at 1239 Harrisburg Pike, Carlisle, Pennsylvania 17013 during 2016 and 2017.

133.   Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. *See* 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers and/or the beneficiaries of the sex trafficking ventures. *See* 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

134.   In this matter, Plaintiff was a victim of sex trafficking on the premises of the subject hotel.

135.    Defendants rented room(s) to individual(s) it knew or should have known were engaged in sex trafficking; and Plaintiff, in particular.

136.    Defendants knowingly benefited financially or by receiving anything of value from participation in a venture which said Defendants knew or should have known has engaged in an act in violation of this chapter.

137.     As to Plaintiff's TVPRA action as against the above captioned Defendants, Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

138.    Defendants participated in a venture by operating the subject hotel that rented rooms to individuals that Defendants knew or should have known were involved in sex-trafficking pertaining to Plaintiff.

139.    The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

140.    Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented for Plaintiff and her trafficker(s) at the subject hotel. In addition, Defendants received other financial benefits including but not limited to food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

141.    Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff due to the many red flags then and there existing, including but not limited to:

    a.   Constant foot traffic of "Johns" to the trafficker's room to have sex with trafficked

women.

b. Parade of unregistered and suspicious individuals in and out of the subject room(s) where trafficking was occurring.

c. Suspicious people coming in and out of the rented room(s).

d. Trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing.

e. The trafficked drug impaired women on the hotel premises.

f. The trafficked alcohol impaired women on the hotel premises.

g. The trafficked behavior impaired women on the hotel premises.

h. The trafficked speech impaired women on the hotel premises.

i. The trafficked hygiene impaired women on the hotel premises.

j. The trafficked women with visible bruises (from being hit by traffickers) on the hotel premises.

k. The trafficker(s), trafficker's entourage, and trafficked women standing outside the room when a "John" came to the room. (When the room was not occupied by a paying "John" the room was full of suspicious people including the trafficker(s), the traffickers' entourage, and the trafficked women. When a "John" would come to the room, everyone but the "John" and the trafficked woman would leave the room, so there would be a number of people including drug impaired, behavior impaired, hygiene impaired, speech impaired, sleep deprived, malnourished, with bruises loitering outside the room.

l. Inside the hotel room there was a suspicious bunch of people and suspicious items

including weapons, cash, phones, drugs, drug paraphernalia, condoms, lubricants, lingerie, and syringes.

m. Smoking cigarettes and drugs in room made noticeable odor which would permeate outside room.

n. The activity of these suspicious looking people was not limited to inside the rented room and directly outside the room but also throughout the accessible common areas and public areas of the subject hotel.

o. Trafficker(s) speaking to women in aggressive/abusive manner – which should have raised alarms.

p. Staying at hotel with no luggage/suitcases or few personal belongings

q. Plaintiff's trafficker(s) was a pimp and his general conduct on hotel grounds was not discreet. As Plaintiff's trafficker(s) was frequently on drugs and exhibited violent and aggressive behavior.

r. Trafficker(s) monitoring hotel hallway or door of room or walking hotel perimeter.

s. Underage victim(s) being trafficked on premises in an overt manner.

t. Other commonly known sex trafficking red flags which the above captioned Defendant would have been aware of had anti-trafficking measures been timely and properly implemented at the hotel.

142. Defendants were participating in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of Plaintiff for commercial sexual exploitation by repeatedly renting room(s) at subject hotel to people Defendants knew or should have known were engaged in sex trafficking.

143.    Defendants actively participated in this illegal endeavor by knowingly or negligently providing lodging in which to harbor Plaintiff while she was being trafficked.

144.    Plaintiff was forced to perform commercial sex acts in the room(s) at the subject hotel. Accordingly, the traffic and parade of men coming in and out of her room was tremendous. This procession of unregistered male guests would have been open and obvious to anyone working at the subject hotel.

145.    Moreover, this traffic of men and unregistered guests coming in and out of the room would cause alarm to any observing individual.

146.    Plaintiff was sold via commercial sex transactions at the Defendants' subject properties, where force, fraud, and/or coercion were used against her, while Defendants turned a blind eye and continued to benefit.

147.    Defendants profited from the sex trafficking of Plaintiff and knowingly or negligently aided, enabled, and facilitated the sex trafficking of Plaintiff. Defendants rented rooms to Plaintiff's trafficker(s) when they knew, or should have known, that her trafficker(s) was using the room to subject Plaintiff to repeat sexual exploitation and sexual servitude.

148.    Defendants' failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including but not limited to being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple "Johns" per day while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by her including her causally related PTSD.

REMAINDER OF PAGE LEFT INTENTIONALLY BLANK

149.    Plaintiff was advertised for sex on websites known for trafficking, including Craigslist, whereby Defendants provided open access to these known websites permitting traffickers and buyers to enable, facilitate, and otherwise assist in the harboring of Plaintiff for the purpose of sex trafficking.



21 year old mixed women with 22 year old white female friend. We are hosting a gangbang at our hotel in Carlisle. We are both smokin hot, love oral, dp and anal. No hole is off limits. Everyone is welcome no age or race preference. Doors are open now. Stop by and fuck us.



Roadway Inn, Carlisle near White House, Room 123.

150.    Plaintiff is the "22 year old white female friend" referenced in the above ad.

151.    Plaintiff being sex trafficked at these subject hotels was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not

limited to personal injuries and significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

152. As a direct and proximate result of Defendants' multiple failures to act, mandate, establish, execute anti-trafficking measures and/or modify their anti-trafficking efforts at their hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel during 2016 and 2017.

153. As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT II – VICARIOUS LIABILITY

*Plaintiff v. Rodeway Inn International, Inc., Choice Hotels International, Inc., and Sonesta International Hotels Corporation*

154. The Corporate Defendants retained control, or the right to control the mode and manner of the work performed by the subject hotels because they shared profits with the subject hotels, employee training, standardized and strict rules of operations, controlled pricing and reservations, regularly conducted inspections, and had the right to terminate their agreements with the subject hotels if the subject hotels failed to comply with the requirements promulgated by Corporate Defendants. In short, Corporate Defendants had the right to control the way work is accomplished at the subject hotels at all relevant times in this Complaint.

155. The Corporate Defendants failed to properly exercise control over the subject hotels by:

a. Failing to adopt policies aimed at effectively addressing sex trafficking;

b. Failing to implement policies aimed at effectively addressing sex trafficking;

c. Failing to properly train employees on recognizing the signs of and properly responding to sex trafficking;

d. Failing to adopt and implement standardized and strict rules of operations;

e. Failing to regularly conduct inspections of the subject hotels;

f. Failing to terminate their agreements with the subject hotels after it became clear that sex trafficking was occurring on the premises.

156.    Corporate Defendants profited from the sex trafficking of Plaintiff and knowingly or negligently aided, enabled, and facilitated the sex trafficking of Plaintiff.

157.    Corporate Defendants' failures to properly exercise control over the subject hotels was a proximate cause, competent cause and substantial factor in causing her sex trafficking.

158.    As a direct and proximate result of Corporate Defendants' multiple failures to act, mandate, establish, execute anti-trafficking measures and/or modify their anti-trafficking efforts at their hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel during 2016 and 2017.

As a consequence of being sex trafficked at the subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotels.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants for more than $75,000, as identified in each of the above-referenced claim(s) and Count(s) and as follows:

a) All available compensatory damages for the described losses with respect to each cause of action;

b) Past and future medical expenses, as well as the costs associated with past and future life care;

c) Past and future lost wages and loss of earning capacity;

d) Past and future emotional distress;

e) Consequential and/or special damages;

f) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g) Disgorgement of profits obtained through unjust enrichment;

h) Restitution;

i) Reasonable and recoverable attorney's fees;

j) Punitive damages with respect to each cause of action;

k) Costs of this action; and

l) Pre-judgement and all other interest recoverable.


**THE PLAINTIFF DEMANDS A TRIAL BY JURY**


Dated: December 12, 2024

**RESPECTFULLY SUBMITTED,**

/s/*Ryan P. Dickinson,* Esq.

Ryan P. Dickinson, Esq.
Andreozzi + Foote, P.C.
4503 N Front St,

Harrisburg, PA 17110
866-311-8640
Ryan@vca.law